# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Michael T. Hughes (2015-1106050), ) <br> ) <br>                Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> Cook County, et al., ) <br> ) <br>               Defendants. ) <br> ) <br> _____ ) | Case No. 18 C 5582 <br><br> Hon. Virginia M. Kendall |
| Michael T. Hughes (2015-1106050), ) <br> ) <br>                Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> Mark Wolfe, ) <br> ) <br>               Defendant. ) <br> ) <br> _____ ) | Case No. 18 C 5895 <br><br> Hon. Virginia M. Kendall |
| Michael T. Hughes (2015-1106050), ) <br> ) <br>                Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> Khan, et al., ) <br> ) <br>              Defendants. ) <br> _____ ) | Case No. 18 C 6138 <br><br> Hon. Virginia M. Kendall |
| Michael T. Hughes (2015-1106050), ) <br> ) <br>                Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> Cook County, et al., ) <br> ) <br>              Defendants. ) <br> _____ ) | Case No. 18 C 6139 <br><br> Hon. Virginia M. Kendall |

| | |
|---|---|
| Michael T. Hughes (2015-1106050), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 1791 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| Mrs. Davis, et al., ) | |
| ) | |
| Defendants. ) | |
| Michael T. Hughes (2015-1106050), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 2457 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| Deputy J. Reichard, et al., ) | |
| ) | |
| Defendants. ) | |
| Michael T. Hughes (2015-1106050), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 3282 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| Director Gavin, et al., ) | |
| ) | |
| Defendants. ) | |
| Michael T. Hughes (2015-1106050), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 6469 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| Salamane, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM, OPINION & ORDER**

The motions to dismiss [22] in Case 19-cv-1791, [20] in Case 19-cv-2457, and [27] in Case 19-cv-3282 are granted. Each of the eight above-captioned cases are dismissed with prejudice due

to Plaintiff's perpetration of fraud upon the Court. The Clerk is directed to enter final judgment in each case and close each case. All other pending motions in all above-captioned cases are terminated as moot. All eight cases are referred to the Executive Committee with a recommendation that Plaintiff be barred from filing new lawsuits in this Court until he has paid his outstanding filing fees in full.

## STATEMENT

Over the past nearly two years, Plaintiff Michael Hughes, an inmate at the Cook County Jail, initiated 15 federal lawsuits in this district (all pending before this Court) concerning his experience at the jail. At the present time, eight of his cases remain pending: *Hughes v. Mrzeana*, 18-cv-5582; *Hughes v. Wolfe*, 18-cv-5895; *Hughes v. Khan*, 18-cv-6138; *Hughes v. Cook County*, 18-cv-6139; *Hughes v. CRW Davis*, 19-cv-1791; *Hughes v. Reichard*, 19-cv-2457; *Hughes v. Gavin*, 19-cv-3282; and *Hughes v. Salamane*, 19-cv-6469. The Court granted him leave to proceed *in forma pauperis* ("IFP") in all eight of those actions due to his statements of indigency to the Court. The Court also granted him leave to proceed IFP in an additional four actions, which are no longer pending: *Hughes v. CCDOC*, 18-cv-6583; *Hughes v. Cook County Doc*, 18-cv-6587; *Hughes v. Dart*, 19-cv-2487; and *Hughes v. Wolfe*, 19-cv-3174. In short, Plaintiff has been bestowed the privilege of proceeding IFP in this Court 12 times over the last two years.

Plaintiff has accrued approximately $5,000 in filing fees for the litigation he initiated, but he has paid only $153.59 to date. He presently owes: $319.84 in *Hughes v. Mrzeana*, 18-cv-5582; $319.84 in *Hughes v. Wolfe*, 18-cv-5895; $319.84 in *Hughes v. Khan*, 18-cv-6138; $328.23 in *Hughes v. Cook County*, 18-cv-6139; $319.84 in *Hughes v. CCDOC*, 18-cv-6583; $339.75 in *Hughes v. Cook County Doc*, 18-cv-6587; $349.07 in *Hughes v. CRW Davis*, 19-cv-1791; $0. in *Hughes v. Cook County*, 19-cv-1793 (filing fee waived); $350 in *Hughes v. Reichard*, 19-cv-2457;

3

$350 in *Hughes v. Dart*, 19-cv-2487; $350 in *Hughes v. Wolfe*, 19-cv-3174; $350 in *Hughes v. Gavin*, 19-cv-3282; $400 in *Hughes v.* Dart, 19-cv-4047; $400 in *Hughes v. Dart*, 19-cv-5145; and $400 in *Hughes v. Salamane*, 19-cv-6469.

Before the Court began collecting its fees directly from his trust fund account, Plaintiff received regular deposits to the account from several sources, including friends and family who made deposits on a consistent repeat basis. *See* Case 19-cv-1791, Dkt. 28-1 (Plaintiff's trust fund account statement, printout dated 12/17/19). Since Plaintiff entered Cook County Jail in November 2015 through March 2019, Plaintiff received 74 separate deposits to his trust fund account that totaled $3,727.05, for an average monthly deposit of approximately $93.00 a month. *Id.* As indicated, several of the people who deposited funds did so on a regular and repeat basis; for example, an "Antonio Hughes" made 23 deposits to Plaintiff's account, and a "Yesmi Hughes" made 26 deposits. *Id.* Plaintiff regularly used the funds to make commissary purchases. *Id.*

The regular deposits from all sources (and commissary spending) ceased, however, after this Court increased its efforts beginning in April 2019 to collect its owed fees. At each telephonic status, the Court questioned how it was possible that Plaintiff had filed so many cases without paying any money towards the filing fees. Each time the County sought to extract filing fees from his account, his account was depleted. Plaintiff received only one deposit, for $10, to his jail account from April 2019 through December 2019. *See id.* Since March of 2019, Plaintiff has maintained a balance in his trust fund account of less than $10.00 and has purportedly only made two purchases at the commissary (totaling $0.75). *See id.* Right around the same time, on April 22, 2019, this Court entered orders in several of Plaintiff's cases warning the trust fund officer at Cook County Jail that it must collect **100%** of Plaintiff's deposits each month, if his balance exceeded $10, for payment to the Court for its fees, or face sanctions. *See* Case 19-cv-1791, Dkt.

5; Case No. 19-cv-2457, Dkt. 5; Case No 19-cv-2487, Dkt. 5.  (The Court also issued similar orders in two more of Plaintiff's cases in May.  *See* Case No. 19-cv-3174, Dkt. 6; Case No. 19-cv-3282, Dkt. 7.)  On May 15, 2019, Plaintiff sent a letter to the clerk requesting an accounting of his fees so he could "reduce the amount of my debt".  *See* Case 19-cv-1791, Dkt. 9.  In response, on June 3, 2019, this Court issued a minute entry (which was docketed in each of his cases) informing Plaintiff of the thousands of dollars he still owed in filing fees and explaining that the debt was irrevocable, even if any case was dismissed, voluntarily or involuntarily.  *See, e.g.,* Case 19-cv-1791, Dkt. 12; *Newlin v. Helman*, 123 F.3d 429, 432 (7th Cir. 1997); *Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999).

This timeline of events shows that the simultaneous cessation of funds from all sources to Plaintiff's trust fund account coincided directly with this Court's increased efforts to collect its fees.  This Court had thus been concerned for some time that Plaintiff had structured his finances to purposefully thwart application of the Prison Litigation Reform Act's ("PLRA") mechanism for collecting fees through a prisoner's trust fund account, 28 U.S.C. § 1915(b).  The Court has not been able to collect any of Plaintiff's outstanding filing fees on any of his cases, open or closed, since July 2019 because there have been insufficient funds in his trust fund account.

Then on December 23, 2019, Defendants submitted a reply brief in support of their motion to dismiss Case 19-cv-1791 that contained evidence that confirmed the Court's concerns.  *See* Case 19-cv-1791, Dkt. 28 at 7-11.  Defendants in that action submitted an audio recording of two telephone calls from December 2019 between Plaintiff and his brother, Antonio Hughes, in which Plaintiff directs Antonio to deposit funds for Plaintiff's personal use into the trust fund accounts of two of his tier mates, who will in turn allow Plaintiff to then access the funds.  *Id.* at 9.  Plaintiff expressly tells his brother that this needs to be done so that Plaintiff can avoid collection of his

5

filing fees. *Id.* At one point in the conversation, Antonio inquires how much Plaintiff's "fees" are, to which Plaintiff replies, "$9,000", and then explains that he "is waiting for the settlement to get off that but for now this is a way to get around it". *Id.* Plaintiff explains to his brother that he incurred the fees "because [Plaintiff] put the lawsuits in" but then says that "he can't talk about that" because the phone call is recorded. *Id.* Defendants also submitted the trust fund statements of Plaintiff's tier mates, which in fact show the deposits from Antonio Hughes. Case 19-cv-1791, Dkt. 28 at Exs. D, F. This evidence unequivocally demonstrates that Plaintiff is purposefully attempting to thwart the PLRA's mechanism for collection of his filing fees through his trust fund account.

In an abundance of caution, the Court allowed Plaintiff to file a sur-reply to address this evidence and give an explanation why, not only this case, but all of his cases where he has been granted IFP status, should not be dismissed with prejudice for perpetrating a fraud upon the Court. Case 19-cv-1791, Dkt. 31. The Court warned Plaintiff that it was considering this sanction given that Plaintiff's seeming efforts to divert his funds impeded the Court's ability to collect his filing fees for all of those cases. *Id.* The Court also warned Plaintiff that it has ample authority to sanction intentionally fraudulent conduct designed to obtain a benefit from the court, such as the privilege of proceeding IFP. *Id.*, *citing Greyer v. IDOC*, 933 F.3d 871, 880 (7th Cir. 2019); *Wilson v. Wexford Med. Servs.*, 751 Fed App'x 956, 957 (7th Cir. 2019); *Kennedy v. Huibregtse*, 831 F.3d 441, 444 (7th Cir. 2016); *Coleman v. Calumet City*, 754 Fed. App'x 468, 468-69 (7th Cir. Feb. 27, 2019). Plaintiff was then advised again by a separate minute entry, docketed in all of Plaintiff's pending cases, that his sur-reply would apply to all pending cases. *See, e.g.*, Case 19-cv-1791. Defendants were also ordered to file a consolidated response to the sur-reply. *Id.*

Plaintiff complied and filed a consolidated sur-reply wherein he not only admitted the conduct, he essentially claimed he was entitled to engage in it. Case 19-cv-1791, Dkt. 38 (also docketed in all above-captioned cases). In the brief, he admits that he directed his brother to deposit funds into two other inmates' accounts for his personal use: "To that fact, that I placed funds on anothers [a]ccount the State is correct in its accusation and responsibility for that I will not attempt to allude the Honorable's intuition." Plaintiff also admits that he uses the money for personal purchases, specifically "to buy clothes and stock up on hygiene." He engaged in this conduct not to avoid paying court fees, he claims; but instead: (1) to avoid paying "unpaid debts" that he owes to Cook County's Law Library in conjunction with "conducting discovery"; and (2) to remain eligible for Cook County's "indigent services". Plaintiff purports that if his family members deposited their funds into his own account, "CCDOC will deduct their fees within seconds of [it's] deposit." He laments that the "majority" of the deposits would meet this fate. Although he does not expound on the nature of his debt to the Law Library, the Cook County Defendants extrapolate that Plaintiff is referring to Cook County's policy of charging for photocopies that exceed 60 pages. The Defendants explain in their consolidated response that if a detainee does not have proper funds to pay for the total photocopying beyond 60 pages, the detainee signs an authorization for the release of his funds to the law library for the amount owed. Plaintiff has signed multiple releases of his funds for photocopying documents over 60 pages, and in earlier months he has had photocopying fees deducted from his trust fund account. Plaintiff also explains that if his family members were to deposit money into his own account, he would then no longer qualify for "indigent services". The Cook County Defendants explain that Plaintiff is referring to what is known as Cook County's "Indigence Program", which provides detainees with certain free writing supplies and personal hygiene products if their income does not exceed

$25.00 in the 30 days before the services or products are provided. Plaintiff explains that if he did not qualify for the Indigence Program, then he would have to pay for certain hygiene products and writing supplies, instead of receiving them for free. Plaintiff perceives his conundrum as boiling down to, "the financial stresses that CCDOC high fees adds, which are almost always incurred if you are conducting discovery, puts a destitute detainee in dire need of the indigent services to essentially take a shower or two and communicate to the Courts". Plaintiff has decided that the County's "pricing scheme" leaves him with two choices: "[1] paydown my debt and not be able to communicate to the Court or [2] not have funds placed on my account just to be able to communicate with the Court and have bare minimal hygiene by virtue of indigent services provided by CCDOC".

The Court is baffled that Plaintiff appears to believe that his financial machinations described in his sur-reply absolve him. Much to the contrary, he admitted that he habitually diverts funds from his trust fund account in order to create a false appearance of poverty so he may avoid paying his debts and instead obtain various benefits – to which he is not in fact entitled – from the government. Whether Plaintiff's primary purpose in doing so is to avoid his filing-fee obligations, avoid paying excess photocopying fees, or avoid exceeding the Indigence Program's income threshold is immaterial. Plaintiff undoubtedly knew that his maneuverings would ultimately thwart the PLRA's collection mechanism, and he was motivated by such, because he *said so* to his brother during the recorded call. Plaintiff told his brother to send money to his tier mates in order to "get around" his obligation to pay filing fees. And timing is an important factor here too. The fact that the regular and frequent deposits to his own account ceased just on the heels of his communications with this Court where he asked how to "reduce my debt" is also evidence that his filing-fee obligations motivated his decision to divert funds. Plaintiff's protests that he cannot

afford to pay for both personal items such as hygiene products and his litigation costs at once does not change the fact that he admitted to intentionally attempting to avoid the operation of the PLRA by asking his brother to deposits funds to his tier mates, knowing that otherwise, the funds would be subject to fee deductions in connection with his 15 cases. There can be no availing excuse for this conduct, let alone an excuse that essentially boils down to: *I was actually defrauding the County, not the Court*. *See generally Ayoubi v. Dart*, 640 F. App'x 524, 528 (7th Cir. 2016) ("The Court need not accept an explanation from an inmate that is crafted only to exonerate litigation misconduct.").

It is beyond reproach that Plaintiff's conduct is worthy of some sanction. "Proceeding *in forma pauperis* is a privilege, not a right," *Lofton v. SP Plus Corp.*, 578 F.App'x 603, 604 (7th Cir. 2014). The Court therefore determines what sanction is appropriate in these circumstances. The Court may use its inherent authority to issue a sanction that is "proportionate to the gravity of the offense," *id.*, and penalize[s] and discourage[s] misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 –50 (1991)). A hearing is not required since the Court gave Plaintiff "notice of the possible sanction and an opportunity to respond to its order to show cause," which is "sufficient process." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (collecting cases).

As the Court finds that Plaintiff has admitted to intentionally trying to thwart the PLRA's mechanism for collecting the approximately $5,000 in fees that he owes this Court by diverting his funds, the Court concludes that dismissal of each action where he was bestowed the privilege of proceeding IFP is appropriate. Plaintiff's misconduct has, after all, impeded the Court's ability to collect *any* of the fees owed for each and every one of those cases since the time he began diverting funds, leaving nearly $5,000 in fees unpaid. This is particularly troubling given that

9

Plaintiff has filed so many cases in a relatively short period of time, which means both that the amount of uncollectable debt is high and that countless hours of judicial resources have been expended on his cases. Courts, when faced with similar abusive conduct by litigants, have found dismissal to be the appropriate sanction. *See Campbell v. Nyklewick*, No. 05-C-481-C, 2006 WL 6087657 (W.D. Wis. May 9, 2006) (dismissing case brought by inmate whose girlfriend deposited money into another inmate's account for his use, thereby "creat[ing] an illusion of destitution" to avoid paying his accumulated filing fees); *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 468 (S.D.N.Y. Aug. 2, 2004) (dismissing case brought by inmate who "created an illusion of poverty through a series of deceptive acts," including diverting settlement funds to her mother and representing that it was "unfeasible" to have money deposited to her prison account"). Although the Seventh Circuit has not addressed this precise situation, it has repeatedly noted that intentional depletion of a trust fund account by a prisoner subject to the PLRA can be problematic in several contexts. *See Allen v. LaSalle Cty. Jail*, 606 Fed. App'x 854, 855 (7th Cir. 2015) (explaining that financial information post-dating the submission of an IFP motion is properly before the Court when it suggests that an inmate is attempting to avoid assessment of a greater filing fee under the PLRA); *Sultan v. Fenoglio*, 775 F.3d 888, 891 (7th Cir. 2015) ("Our view [regarding a prisoner's qualification to proceed IFP] would be different if there were evidence that [a prisoner] was intentionally depleting his trust account to avoid paying his filing fee"); *see also generally Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) "[P]risoners who play games to avoid the PLRA should not expect courts to cooperate.").

The Court lastly considers whether to dismiss with or without prejudice. *See Thomas v. Gen. Motors Acceptance Corp.,* 288 F.3d 305, 306–07 (7th Cir. 2002). When conduct is properly characterized as intentional or fraudulent and is sufficiently egregious, a sanction of dismissal with

prejudice is appropriate. *See Aguilar v. Goldberg*, 770 App'x 293, 295 (7th Cir. May 20, 2019); *Ruiz v. Bautista*, No. 19-1425, 2020 WL 974896, at *3 (7th Cir. Feb. 28, 2020); *see also Greyer*, 933 F.3d at 880 (explaining that while district courts "should proceed carefully before imposing severe sanctions on prison litigants," they "remain empowered to sanction extreme bad-faith conduct"); *Wilson*, 751 Fed App'x at 957 (citing *Hoskins v. Dart*, 633 F.3d 541 (7th Cir. 2011) (sanctions based on "an attempt to intentionally mislead the court in pursuit of some illicit benefit" finds "ample support in our case law"). A court may dismiss a case with prejudice based on intentional misrepresentations even if the plaintiff is actually impoverished. *Chriswell v. Big Score Entm't, LLC*, No. 11 C 00861, 2013 WL 3669074, at *4, n.6 (N.D. Ill. July 12, 2013).

Here, the sanction of dismissal with prejudice is warranted as it is proportionate to the gravity of Plaintiff's misdeeds. Although this Court recognizes that the sanction is severe, the alternative—dismissing without prejudice to Plaintiff's ability to refile and start over again in each case—is too lenient and in fact would not exact any real sanction at all despite numerous deeply troubling aspects of Plaintiff's conduct and his submissions. *See generally Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 940 (N.D. Ill. 2007) (noting that a dismissal without prejudice to refiling would allow a *pro se* plaintiff's "gamble with the false IFP affidavit" to pay off by "leaving her in no worse position than if she had told the truth . . . This sort of heads I win, tails you lose approach is unacceptable in all contexts").

First, the actions that Plaintiff took to create a false appearance of poverty were not just knowing, but were also purposefully unlawful. Plaintiff, per his own words captured on the audio recording, diverted his funds *for the purpose* of avoiding PLRA deductions. This supports dismissal with prejudice in and of itself. *See*, *e.g.*, *Kennedy*, 831 F.3d at 444 (finding dismissal with prejudice was proper sanction for knowingly attempting to conceal assets when applying for

11

*in forma pauperis* status); *Coleman*, 754 Fed. App'x at 468-69 (affirming dismissal with prejudice based on inaccurate IFP financial disclosures after rejecting plaintiff's claim that misrepresentations were due to an oversight); *Donelson*, 768 Fed. App'x at 574 (a district court has the authority to dismiss with prejudice when a litigant "lies . . . about his financial status"). But what is more, the excuse that Plaintiff provided to this Court – his deceptive practices were aimed at the County only, not this Court – is, as already explained, demonstrably untrue. "Plaintiffs who attempt to deceive federal judges . . . cannot expect favorable treatment on matters of discretion." *Campbell v. Clarke*, 481 F.3d 967, 970 (7th Cir. 2007). This rule is especially applicable to litigants who dig in their heels by attempting to "cover[] up one lie with another." *Aguilar*, 770 App'x at 295 (affirming dismissal with prejudice where plaintiff lied in response to show-cause order regarding whether he was indigent); *see Secrease v. W & So. Life. Ins. Co.*, 800 F.3d 397, 400-01 (7th Cir. 2015) (affirming dismissal with prejudice when litigant "dug a deeper hole of deception").

Second, and even more troubling, is the fact that Plaintiff does not appear to appreciate that he has done anything wrong. In fact, he believes he is entitled to the actions that he took. He has offered as an excuse what is in actuality an admission of habitually diverting funds in order to defraud not just one (the Court), but rather two (Cook County as well) public institutions. There is no constitutional right to spend personal cash at the commissary. That is a privilege; and yes, pretrial detainees must make choices about filing lawsuits, including that the cost of the filing fee will be deducted in small increments over time thereby reducing the amount of cash that he can spend personally. The PLRA allows the pretrial detainee to file in former pauperis upon a finding of indigency by the Court. That means that the detainee has decided that a portion of his account will go to the filing of the lawsuit each month. Recognizing this, detainees file daily,

12

understanding that they might need to forgo the purchase of a particular item of food or bar of soap in order for a portion of their account to support the filing fee. The Cook County Jail has an obligation to pay for the basic constitutional care of housing, food, and hygiene for each pretrial detainee. Any bar of soap or snack item purchased at the commisary is a choice made by the detainee; as is the choice of filing a lawsuit. Mr. Hughes has chosen to file 15 lawsuits and that choice, made 15 times, came with the understanding that he would lose his privilege of buying commissary items because 100% of his account would be going to the filing fees. This Court warned him repeatedly as the filings continued to come in. He knew of these warnings and he intended to maintain his ability to choose items from the commissary and file his lawsuits. Somehow, he believed he is different from all other detainees and can operate his way rather than the way of the PLRA. He has abused the privilege of proceeding in forma pauperis and wasted this Court's time and the time of the officers of the Cook County Jail.

Third, the Court has spent a significant amount of time reviewing Plaintiff's cases, ruling on motions to dismiss, and attempting to sort through the voluminous accusations that often overlap pervious lawsuits, all in an effort to protect his rights while also determining whether the cases may move forward. These cases have sometimes been filed back to back, other times just weeks apart. In fact, Plaintiff's cases comprise 26% of all of this Court's prisoner civil rights cases. Meanwhile, while the Court is reviewing the matters, the Cook County Jail has expended significant efforts to collect the funds each month as well. This fraud upon the Court comes with a heavy load of work from the judicial and executive branches of government.

For all these reasons, and to send a firm message about the necessity of being truthful, ethical, and forthright throughout the litigation process, all the above-captioned cases are dismissed with prejudice. This matter is also referred to the Executive Committee with a

recommendation that Plaintiff be barred from filing new lawsuits in this Court until he has paid his outstanding filing fees in full.

Final judgments will enter in each of the above-captioned cases. If Plaintiff wishes to appeal, he must file a notice of appeal for each case with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, Plaintiff will be liable for the $505 appellate filing fee in each case he appeals regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If an appeal is found to be non-meritorious, Plaintiff could be assessed "strikes" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1). Any such motions must specify the issue(s) Plaintiff intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

Date: March 17, 2020

_____
Hon. Virginia M. Kendall
United States District Judge